THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK LAPETINA, Appellant. [828 NYS2d 72]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Cooperman, J.), rendered June 29, 2004, convicting him of burglary in the first degree, assault in the third degree (two counts), and endangering the welfare of a child, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reducing the conviction of burglary in the first degree to burglary in the second degree, and vacating the sentence imposed thereon, and by vacating the convictions of assault in the third degree, and vacating the sentences imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for resentencing on the conviction of burglary in the second degree and for a new trial on the counts of assault in the third degree.

The defendant was charged with, among other things, burglary and assault, based on allegations that he, along with his son, entered the residence of Sunattie Persaud (hereinafter Sunattie) without permission and, while inside, assaulted Sunattie and her husband, Muneshwar Persaud (hereinafter Muneshwar), their adult son, Ricky Persaud (hereinafter Ricky), their younger son, Steven Persaud (hereinafter Steven), and Ricky's infant daughter. Sunattie and Muneshwar (hereinafter collectively referred to as the Persauds) testified that the defendant punched or hit them and their son, Ricky, threatened to kill Ricky and his infant daughter, that the defendant's son hit Muneshwar and Ricky with a baseball bat, and attacked the Persauds' son Steven, and that the defendant's daughter, Justine LaPetina (hereinafter Justine), pointed out Ricky to the defendant and urged the defendant to "crack his head open."

The defendant admitted that he entered the Persauds' home without permission, but contended that he had done so only because he believed, albeit erroneously, that Justine was inside and was hurt or in danger. He testified that, upon receiving a telephone call alerting him that Justine was in danger, he drove to the address he was given and, upon arriving, asked a group of people standing outside if they knew her location. According to the defendants, someone responded to this inquiry by pointing toward the Persaud residence and, at approximately the same time, he heard a scream come from inside. He stated that he then entered the house through an unlocked door and, as soon as he did so, was punched by one man from his left and was approached by a second man with his hands raised. The defendant testified that he responded by swinging his elbow out to push away the person to his left and punching the other man two or three times.

The jury convicted the defendant of burglary in the first degree, assault in the third degree upon Muneshwar and Ricky, and endangering the welfare of a child, and acquitted him of, inter alia, charges involving the use of a baseball bat (assault in the second degree) and breaking down the door (criminal mischief). On appeal, the defendant contends that the trial court erred in granting the prosecution's application to amend the first count of the indictment, charging burglary in the first degree, so as to change the name of the person injured from Sunattie to Muneshwar, and improperly denied the defendant's request that the jury be given a justification charge with respect to the burglary and assault charges. The defendant also contends that the trial court erred in precluding him from introducing photographs showing the serious injuries sustained by another person during an earlier altercation involving Ricky and Justine, and in prohibiting cross-examination of the Persauds regarding threatening telephone calls and a demand for payment allegedly made by them. We modify by reducing the conviction of burglary in the first degree to burglary in the second degree, vacating the convictions of assault in the third degree, and ordering a new trial on the assault charges, and otherwise affirm the judgment.

The limited circumstances in which an indictment may be amended are governed by CPL 200.70 (*see People v Perez,* 83 NY2d 269 [1994]). That section permits the court to "order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected

in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits" (CPL 200.70 [1]).

The amendment permitted by the Supreme Court here did not fall within these parameters. In presenting the case to the grand jury, the People asserted that a first degree burglary had been committed because Sunattie was physically injured. The grand jury indicted the defendant on that basis. By later amending the indictment to charge that the person who had been injured was Muneshwar, the People changed their theory of the case, which is impermissible (see People v Perez, supra at 274; People v Brown, 221 AD2d 353 [1995]; People v Chicas, 204 AD2d 476, 477 [1994]). While the fact that the defendant was charged elsewhere in the indictment with having caused physical injury to Muneshwar may limit the prejudice that the defendant suffered as a result of the amendment, it does not overcome the fact that, with respect to the burglary charge set forth in the first count, the amendment changed the theory of the case on which the grand jury had indicted.

Nonetheless, the evidence adduced at trial supports the defendant's conviction of burglary in the second degree (see Penal Law § 140.25 [2]). Unlike burglary in the first degree, the elements of burglary in the second degree do not include physical injury to any person (compare Penal Law § 140.30 [2], with Penal Law § 140.25 [2]), the only element of burglary in the first degree affected by the amendment of the indictment. Rather, all that is required to establish guilt of burglary in the second degree, as charged in the second count of the indictment, is that the defendant knowingly entered or remained unlawfully in a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]). Although the jury did not reach that count of the indictment, it necessarily concluded, in finding the defendant guilty of burglary in the first degree under the amended first count, that the People had established all of the elements of burglary in the second degree, and the evidence was legally sufficient to sustain that finding. Thus, in the exercise of our broad authority to modify a judgment (see CPL 470.15; cf. People v Davis, 118 AD2d 795, 796 [1986]), the defendant's conviction of burglary in the first degree is properly reduced to a conviction of burglary in the second degree.

The defendant next claims that the trial court erred in declining to give a justification charge with respect to both the burglary and assault counts of the indictment. The defendant's argument with respect to justification as to the burglary charge is preserved for appellate review, contrary to the People's argu-

ment, but, in the peculiar situation presented in this case, the failure to give that charge does not require reversal. The failure of the Supreme Court to instruct the jury as to the defense of justification with respect to the assault charges, however, requires a new trial with respect to those counts of the indictment.

To preserve for appellate review a claim with respect to the content of a jury charge in a criminal case, the defendant must either request the instruction or object to the court's failure to give it (see CPL 470.05 [2]; People v Kettreis, 19 AD3d 706, 707 [2005]; People v Green, 185 AD2d 992, 993 [1992]). The critical factor is that counsel has brought the matter to the attention of the court in a manner sufficient for its adjudication (see People v Cobos, 57 NY2d 798, 800 [1982]; People v Jackson, 149 AD2d 532, 533 [1989]). Here it is clear that the defendant did that. Although the defense counsel did not specify the particular provision of the Penal Law on which his charge request was based, the substance of his argument was for a general justification charge under Penal Law § 35.05, and the Supreme Court addressed the request in that light. The fact that the prosecutor referred to Penal Law § 35.15 in opposing the defense request does not alter the substance of the request or the ruling.

A justification charge is required whenever "any reasonable view of the evidence would permit the factfinder to conclude that the defendant's conduct was justified" (People v Petty, 7 NY3d 277, 284 [2006]; see People v Maher, 79 NY2d 978, 981 [1992]; Penal Law § 35.05). Here, there was such a view, based upon the defendant's testimony that he had driven to the location of the Persaud residence believing Justine to be in danger, and that upon arriving there he entered the Persaud residence after being told that Justine was inside, and after hearing a scream. Nevertheless, on the peculiar facts here, the Supreme Court correctly denied the requested charge in connection with the burglary charge.

The jury was required, in order to reach a verdict with respect to the charge of burglary in the first degree, to determine whether the People established, beyond a reasonable doubt, that the defendant entered the Persaud residence with the intent to commit a crime therein (see Penal Law § 140.30). If the defendant had such intent, however, the defendant could not have entered the residence on the basis of his belief that Justine was being held inside and required assistance. A justification instruction in connection with the burglary charge was, therefore, unnecessary (see People v Santiago, 166 AD2d 362, 362-363 [1990]; People v Bess, 107 AD2d 844, 845-846 [1985]).

A different result is required, however, with regard to the assault charges. Viewing the evidence in the light most favorable to the defendant, as we must for this purpose (*see People v Cox,* 92 NY2d 1002, 1005 [1998]; *People v Padgett,* 60 NY2d 142, 144-145 [1983]), his testimony would support a finding that he used physical force against Ricky and Muneshwar only in response to their initial attack on him, which was not preceded by any verbal warning or admonition (*see People v McManus,* 67 NY2d 541, 549 [1986]; *People v Padgett, supra* at 144-145). Although the lawful occupants of a dwelling are privileged to use reasonable physical force as necessary to terminate a trespass, it was for the jury to determine whether Ricky and Muneshwar were the initial aggressors, whether their use of physical force was reasonable or excessive in the circumstances, and whether the defendant's response was reasonable (*see* Penal Law §§ 35.15, 35.20; *People v McGee,* 173 AD2d 861, 863 [1991]; *see also People v Petty, supra* at 285). Since the evidence of the defendant's guilt of assault in the third degree was not overwhelming, the convictions on those counts may not be sustained by the application of harmless error analysis (*see People v Cain,* 236 AD2d 788, 789 [1997]; *see also People v Glenn,* 52 NY2d 880, 881 [1981]). Accordingly, a new trial on the charges of assault in the third degree, as set forth in the fourth and fifth counts of the indictment, is necessary.

The trial court, however, correctly precluded the defendant from introducing photographs depicting the seriousness of the injuries allegedly inflicted by Ricky on another person in the course of his earlier altercation with Justine. Ricky pleaded guilty to assault in the third degree in connection with that altercation. As such, the photographs were merely collateral evidence offered for impeachment. The photographs did not concern a matter related to the burglary count, or the defendant's requisite intent to commit a crime upon entering the Persaud home (*see Badr v Hogan,* 75 NY2d 629, 635 [1990]; *see generally People v St. Louis,* 20 AD3d 592, 593 [2005]; *cf. People v Acevedo,* 221 AD2d 550, 550-551 [1995]).

Nor did the trial court err in precluding the defense from cross-examining the Persauds in connection with threatening telephone calls and a demand for payment they allegedly made, issues that are clearly collateral to the charges against the defendant. The trial court has broad discretion in making evidentiary rulings precluding or admitting collateral evidence, and the trial court providently exercised its discretion in this regard when it precluded cross-examination in connection with these matters, particularly where the proposed line of questioning

consisted of disparaging questions, not relevant to the issues in the case but bearing solely on the Persauds' credibility (*see People v Aska,* 91 NY2d 979, 981 [1998]; *People v Caviness,* 38 NY2d 227, 232-233 [1975]; *People v Duffy,* 36 NY2d 258, 262-263 [1975], *cert denied* 423 US 861 [1975]; *People v Paixao,* 23 AD3d 677, 677-678 [2005]; *People v Messa,* 299 AD2d 495, 496 [2002]; Prince, Richardson on Evidence §§ 6-304, 6-406 [Farrell 11th ed]; *cf. People v Ashner,* 190 AD2d 238, 246-248 [1993]).

Motion by the respondent on an appeal from a judgment of the Supreme Court, Queens County, rendered June 29, 2004, to strike pages 108 through 110 of the appellant's appendix and the references in the appellant's brief to the material on those pages. By decision and order on motion of this Court dated August 24, 2005 the motion was held in abeyance and referred to the Justices hearing the appeal for determination upon the argument or submission of the appeal.

Upon the papers filed in support of the motion, the papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is denied. Miller, J.P., Goldstein, Spolzino and Dillon, JJ., concur.