*656 OPINION OF THE COURT
Levine, J.
Defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree arising out of the assassination-like killing of Brian Rich, a reputed major drug dealer, on Sutphin Boulevard, Queens County, on the evening of Sunday, August 3, 1986. The only eyewitness who testified at the trial was Richard Saunders, whose evidence was given pursuant to a cooperation agreement entered into with the District Attorney’s office in October 1987. Saunders was a longtime friend of both defendant and the victim. Saunders testified that, while in a local detention facility awaiting trial on unrelated robbery in the first degree and unlawful imprisonment charges, he contacted the authorities regarding his knowledge of the identity of Rich’s killer and eventually was promised dismissal of all pending charges in exchange for giving truthful testimony in the prosecution of the murder.
According to Saunders, sometime in mid-July 1986 defendant offered him $10,000 to murder Rich, which he promptly declined, not taking the defendant seriously. Then, on the evening of August 3, he was walking with Rich on Sutphin Boulevard when he observed a grey van slowly approaching them. He separated himself from Rich because he thought the van might be occupied by police intending to arrest Rich. As the van pulled over to the curb, Saunders saw the sliding door open up and recognized defendant halfway out of the vehicle, armed with an Uzi automatic weapon. Saunders ran as the shooting started and he heard two kinds of weapons being fired. Rich died as a result of gunshot wounds. Saunders testified that defendant called him the next day to chide him for being so close to Rich, knowing that a "contract” was out on his life and to warn Saunders against revealing that he was one of the perpetrators. Saunders also testified to an October 5, 1987 telephone conversation with defendant in which they discussed the killing and another telephone conversation after defendant’s arrest, in which defendant threatened him if he testified.
The forensic evidence adduced at the trial was that the victim had 28 entrance wounds, and that the vast majority of spent bullets and shells recovered from his body or at the crime scene were fired from the same gun, and were of the same caliber as bullets used in the Uzi machine pistol. Also *657 introduced into evidence was a tape recording of the October 5, 1987 telephone conversation between Saunders and defendant, which was initiated by Saunders from the District Attorney’s office pursuant to the cooperation agreement. During that conversation, Saunders turned to the subject of the killing of Rich and asked defendant in substance why he had to use the kind of weapon that would "put so many holes in [Rich]”. Defendant replied that "the Uzi was a weapon they used to kill and that was the gun he had to use”. A postarrest statement of defendant was also introduced into evidence. The defense consisted of the testimony of two alibi witnesses and of the defendant. Defendant was convicted as charged.
The Appellate Division affirmed defendant’s conviction (192 AD2d 553). A Judge of this Court granted defendant leave to appeal, and we now affirm.
Defendant’s first point on this appeal is that the trial court committed reversible error in refusing the defense requests to (1) introduce the testimony of the complainant, a Mark Sills, in the dismissed robbery and unlawful imprisonment indictment against Saunders; and (2) introduce into evidence a transcript of the cooperation agreement between Saunders and the District Attorney’s office leading to that dismissal.[1]
We disagree. Saunders was subjected to rigorous and intensive cross-examination concerning both his commission of the criminal offenses in the dismissed indictment and concerning the cooperation agreement between him and the prosecutor’s office. The defense was furnished with the portions of the sealed file on the dismissed indictment to enable effective cross-examination. Saunders fully admitted the substance of the cooperation agreement and that his cooperation was motivated by the expectation of leniency. However, he denied committing the crimes charged against him in the indictment.
The only ground defendant put forth to the trial court for seeking to introduce the testimony of Sills (Saunders’ alleged victim in the dismissed charges) and the transcript of the *658 cooperation agreement was to contradict Saunders’ denial of guilt of the dismissed charges, and thereby to impeach Saunders’ credibility. Thus, defense counsel in making both requests stated:
"mr. geduldig: My problem is if I want to bring Sills in to show that a gun was put on him.
"the court: You won’t get that either. That’s a collateral issue.
"mr. geduldig: Perjury. * * *
"mr. geduldig: Let’s assume for argument sake that the agreement contains a statement that he committed a crime.
"the court: I don’t care if he did or not. It’s a collateral issue” (emphasis supplied).
At no time during the trial did defense counsel ground his argument for the admissibility of Sills’ testimony and of the cooperation agreement on their probative value to demonstrate Saunders’ bias or interest, as defendant now contends on appeal. Consequently, the admissibility of Sills’ testimony and the cooperation agreement to show Saunders’ bias or interest was not preserved for review by this Court (see, People v Tarsia, 50 NY2d 1, 9-10; People v Cona, 49 NY2d 26, 33, n 2; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 470.05, at 12).
Because the only basis given at the trial for introducing the foregoing evidence was to establish Saunders’ "perjury”, i.e., to impeach his credibility, the Trial Judge properly ruled that its admission was barred by the collateral impeachment rule (see, People v Pavao, 59 NY2d 282, 288-289; People v Sorge, 301 NY 198, 201; Richardson, Evidence § 491, at 477 [Prince 10th ed]). Moreover, as the Appellate Division noted, since the terms of the cooperation agreement and Saunders’ interest and bias were "exhaustively]” (192 AD2d, at 554) explored on cross-examination, introduction of documentary evidence of the agreement was properly denied as being merely cumulative (see, People v Chin, 67 NY2d 22, 29).[2]
Defendant’s remaining argument is that the Trial Judge committed reversible error in its instructions to the jury. Of the errors alluded to, the only one preserved was the refusal *659 of defendant’s request to give an interested witness charge regarding Saunders’ testimony, i.e., that his testimony "should be scrutinized carefully and a determination made as to whether any benefit he received affected the truthfulness of that testimony” (People v Jackson, 74 NY2d 787, 790; see, 1 CJI[NY] 7.24). However, Saunders’ bias and interest were hammered at by the defense in opening, cross-examination and in summation, and not seriously disputed. Under such circumstances, we conclude that the charge as a whole, including the instruction given the jury that it could consider the interest or bias of any witness in assessing the credibility of that person, was sufficient to convey the need to scrutinize Saunders’ testimony with care. And the jury indeed intensely scrutinized Saunders’ testimony, requiring that it be read back to them twice, along with twice hearing the tape recording of his October 5 conversation with defendant. Therefore, the refusal of this requested charge forms no basis for reversal (People v Warren, 76 NY2d 773, 775; People v Agosto, 73 NY2d 963, 967).
Accordingly, the order of the Appellate Division should be affirmed.

. The record indicates that the cooperation agreement was an oral one. However, the dismissed indictment, disclosed to defendant for purposes of cross-examination of Saunders, contained a notation that the prosecutor had moved to dismiss it "for the reasons stated on the record”. No transcript of the minutes of the proceedings on the dismissal of Saunders’ indictment was found in the sealed file, and it is inferable from the record that the minutes of that proceeding were not transcribed. Defense counsel was, thus, actually requesting the transcription of the "reasons stated on the record”, for the purpose of introducing those minutes into evidence.

. Contrary to the position of the dissent, any claim made below concerning the prosecution’s failure to fulfill its Rosario (9 NY2d 286) or Brady (373 US 83) obligations has not been pursued on appeal before this Court.